UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| Erin Sanders,<br><br>    Plaintiff,<br><br>v.<br><br>AmSher Collection Services, Inc.<br><br>    Defendant. | Case No. 3:21-cv-372<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1. Plaintiff, Erin Sanders ("Erin"), is a natural person who resided in Marissa, Illinois, at all times relevant to this action.

2. Defendant, AmSher Collection Services, Inc. ("AmSher"), is an Alabama corporation that maintained its principal place of business in Hoover, Alabama, at all times relevant to this action.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

4. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

1

## STATEMENT OF FACTS

5. At all times relevant to this action, AmSher collected consumer debts.

6. AmSher regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

7. The principal source of AmSher's revenue is debt collection.

8. AmSher is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. As described, *infra*, AmSher contacted Erin to collect a debt that was incurred primarily for personal, family, or household purposes.

10. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

11. Erin is a "consumer" as defined by 15 U.S.C. § 1692a(3).

12. Within the last 12 months, AmSher has been calling Erin in an effort to collect an alleged debt.

13. Multiple times, while speaking on the telephone, Erin has demanded that AmSher cease communicating with her.

14. Erin repeatedly used phrases like, "Stop calling me", "Put me on your DNC list", "I Know my rights", "Stop Calling Me".

15. Erin made it clear to AmSher that their continued calls were unwanted, not useful, not helpful and that Erin wanted AmSher to cease calling her.

16. AmSher's only purpose of continuing to call Erin was to harass, oppress and abuse her.

17. On multiple occasions, when Erin demanded AmSher to cease calling her, AmSher collectors would snap back, "Well, you owe this debt".

18. AmSher knew or had reason to know that AmSher's calls to Erin were inconvenient and unwanted.

19. On multiple occasions, Erin hung up on AmSher after demanding they stop calling her and AmSher would immediately call her back.

20. It is AmSher's policy and practice that when consumers like Erin make it clear AmSher's calls are unwanted and clearly demand AmSher to cease calling them, AmSher doesn't honor these requests by updating their collection file.

21. On numerous occasions, Erin would answer the calls and, despite it sounding like someone was breathing in a creepy fashion on the other end of the line, the caller would refuse to speak, refuse to disclose the name of the caller and refuse to disclose the purpose of the call ("Breathing Call").

22. On multiple occasions, AmSher has called Erin and hung up on her without explanation.

23. On multiple occasions, AmSher would call Erin back immediately after hanging up on her.

24. AmSher has called Erin more than seven times over a seven day period of time.

25. Erin received numerous Breathing Calls from AmSher which was incredibly frightening, frustrating and annoying.

26. Erin believed AmSher was prank calling her to retaliate against Erin for her enforcing her rights under the FDCPA.

27. Despite Erin repeatedly demanding AmSher cease communication with her by phone, AmSher continued to call her and her boyfriend.

28. In Fact, on multiple occasions, AmSher telephoned Erin's Boyfriend ("Boyfriend") in connection with the collection of the debt.

29. On multiple occasions, Boyfriend demanded AmSher to leave him alone and to stop calling.

30. On at least one occasion, Boyfriend told AmSher that they were calling his phone number and that Erin could not be reached at the number they were calling.

31. On at least one occasion, AmSher disclosed to Boyfriend that Erin owed the debt.

32. Despite this, AmSher continued to call Boyfriend.

33. At the time of these communications, AmSher already had Erin's location information.

34. AmSher's collection efforts, including, but not limited to its telephone calls, caused Erin emotional distress in the form of frustration, annoyance, aggravation and anxiety.

35. The harm Erin experienced was the harm the FDCPA was intended to protect against.

36. AmSher's collection efforts also intruded upon Erin's privacy.

37. In addition, each time AmSher placed a telephone call to Erin, AmSher occupied Erin's telephone number such that Erin was unable to receive other phone calls at that telephone number while AmSher was calling her.

38. AmSher's telephone calls also forced Erin to lose time by having to tend to AmSher's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

39. Erin re-alleges and incorporates by reference Paragraphs 5 through 38 above as if fully set forth herein.

40. AmSher violated 15 U.S.C. § 1692c(a)(1) by calling Erin at a time or place known to be inconvenient for Erin.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

41. Erin re-alleges and incorporates by reference Paragraphs 5 through 38 above as if fully set forth herein.

42. AmSher violated 15 U.S.C. § 1692c(b) by communicating with a third party in connection with the collection of the debt without Erin's consent.

### COUNT THREE

**Violation of the Fair Debt Collection Practices Act**

43. Erin re-alleges and incorporates by reference Paragraphs 5 through 38 above as if fully set forth herein.

44. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

45. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

46. The likely effect of AmSher's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Erin.

47. AmSher violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Erin in connection with the collection of the debt.

### COUNT  FOUR

**Violation of the Fair Debt Collection Practices Act**

48. Erin re-alleges and incorporates by reference Paragraphs 5 through 38 above as if fully set forth herein.

5

49. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)("company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

50. AmSher's policies and procedures, as described in Paragraphs 13 through 24 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

51. AmSher's practice, therefore, violates Section 1692d of the FDCPA, which provides:

    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

    *See* 15 U.S.C. §1692d.

52. Because AmSher's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

53. AmSher violated 15 U.S.C. § 1692d(5) by causing Erin's telephone to ring or engaging Erin in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Erin.

6

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

54. Erin re-alleges and incorporates by reference Paragraphs 5 through 38 above as if fully set forth herein.

55. AmSher violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## JURY DEMAND

56. Erin demands a trial by jury.

## PRAYER FOR RELIEF

57. Erin prays for the following relief:

   a. Judgment against AmSher for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

   b. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: April 8, 2021

By:   /s/ Jeffrey S. Hyslip
Jeffrey S. Hyslip, Esq. (Ohio Bar No. 0079315)
Hyslip Legal, LLC
1309 Park St., Suite A
McHenry, IL 60050
Phone: 614-490-4224
Email: jeffrey@hysliplegal.com

*Attorney for Plaintiff*